**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                                        :
SHAROB ABDUL-AZIZ,                      :
                                        :  Civil Action No. 08-5764 (MLC)
            Plaintiff,                  :
                                        :
        v.                              :     O P I N I O N
                                        :
MICHELLE RICCI, et al.,                 :
                                        :
            Defendants.                 :
                                        :
```

**APPEARANCES:**

Sharob Abdul-Aziz, Pro Se, #264368
New Jersey State Prison, P.O. Box 861, Trenton, NJ 08625

**COOPER, District Judge**

Plaintiff, Sharob Abdul-Aziz, currently incarcerated at the New Jersey State Prison, Trenton, New Jersey, filed a civil complaint and application to proceed in forma pauperis, without prepayment of fees, pursuant to 28 U.S.C. § 1915. He then filed a motion to amend the complaint, which was granted, and on June 1, 2009, filed an amended complaint (docket entry 5). On September 16, 2009, Plaintiff filed a motion for a temporary restraining order (docket entry 6).

The Court must review the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

**BACKGROUND**

Plaintiff names as defendants Michelle Ricci, Administrator of the New Jersey State Prison; Donald Mee, the Assistant Administrator; William Moleins, a Captain at the prison; and Clay McClain, a Sergeant at the prison. He refers back to 2006 and a history of the prison's treatment of meals for the Muslim Eid Holidays, and the treatment of Muslim inmates in general. In June 2008, Plaintiff wrote an administrative remedy asking: "one, what is administration's current policy regarding Muslim inmates making congregational prayer during recreation and individually at work assignments during bathroom breaks and lunch breaks? [T]wo, what is administrations's current policy regarding Muslim inmates possession prayer oil in their cells? [T]hree, what is administration's current policy regarding Muslim inmates having donated HALAL MEALS for Id Feast from approved vendor?" (Am. Compl., ¶ 10.)

Mee responded to the remedy on July 29, 2008, stating: "Your request for the above mentioned policies is denied. Secondly, inmates are not permitted to retain oils. Thirdly, Meal or foods are not permitted to come from an outside source." (Am. Compl., ¶ 11.) Plaintiff appealed the denial of his remedy.

On August 12, 2008, Mee stopped Plaintiff in the hallway and asked him if he wanted a transfer out of the prison. Plaintiff said he did, but not until he finished exhausting administrative

remedies on these issues.  Mee told him that he was becoming "a pain in my ass" and that he "look[ed] to return the favor."  (Am. Compl., ¶ 13.)

Three days later, a search was conducted by McClain on the South Compound Visit Hall, where Plaintiff stored his musical equipment, and where Muslims have Friday Prayer.  (Am. Compl., ¶ 14.)  McClain took five memory cards from his equipment.  Plaintiff states that because Muslims do not have their own PA system for services, they used his personal equipment during services.  Upon his inquiring why his memory cards were taken, Plaintiff was told that he was not permitted to have memory cards.  Plaintiff then asked for a charge or confiscation slip.  He also showed the administration that he had approvals for all of the memory cards and other equipment from Mee.  Although Plaintiff states that his equipment was returned a couple of hours later, apparently his memory cards were given to the Special Investigative Division ("SID").  (Am. Compl., ¶¶ 14, 15).

On August 19, 2008, Mee went to Plaintiff's cell and watched television, then walked away.  About an hour later while at work, officers told Plaintiff that he was being "TCC'd," meaning placed in Temporary Close Custody.  Plaintiff was not told why he was being placed in TCC or given any charges.  He was not given any personal property to take with him, and was told that all of his property was seized by SID.  (Am. Compl., ¶ 16.)

3

On August 23, Plaintiff filed an administrative remedy concerning the incident, and on August 28 he was released from TCC and returned to his housing unit, with none of his property. (Am. Compl., ¶¶ 17-19.) He received his property back on September 4, along with a contraband slip of confiscated property, including a radio, a fan, and books. Plaintiff objects to the procedures used to confiscate his property. (Am. Compl., ¶ 20.) Ricci later issued a memo to the prison population stating that memory cards were no longer permitted. (Am. Compl., ¶ 22.)

Plaintiff also complains about the content of meat in vegetarian meals (Am. Compl., ¶ 24), and a memo from Ricci stating that because of budgetary concerns, all religious groups will only be allowed to receive the "meal of the day" for their holidays. Plaintiff states that "[a]s a result, the Muslim community has declined their holiday banquet." He notes that Jewish inmates receive a Kosher diet three times a day, seven days a week, which is paid for by the State. (Am. Compl., ¶ 25.)

Plaintiff asserts another claim concerning his job placement. In January 29, 2009, after working for two years as a Forms Room File Clerk, Plaintiff was terminated from his job for having a speaker on his computer. Plaintiff states the speaker was on the computer before his assignment to the job. (Am. Compl., ¶¶ 26, 27.) He received a disciplinary charge for misuse or possession of electronic equipment, because of the speakers. Plaintiff

4

states there is no rule stating that speakers are prohibited. The charges were eventually dismissed. (Am. Compl., ¶¶ 28, 29.)

Nevertheless, on February 11, 2009, Plaintiff was reassigned to cell sanitation, resulting in an 80% pay reduction. Plaintiff wrote remedy forms concerning his job assignment, and that he was not reinstated to his prior job even though the charges were dismissed, and proper rules were not in place. (Am. Compl., ¶ 30.) Plaintiff's remedy forms were responded to, and it was found that there were speakers and music files on the computer, and that the decisions made concerning reassignment were appropriate. Plaintiff appealed the remedy denials stating that he was being retaliated against, and the appeals were denied. (Am. Compl., ¶¶ 31-34.)

Plaintiff asserts that his constitutional rights have thus been violated. He claims he was retaliated against for filing civil suits and remedies. He also claims that his right to practice his religion was violated, and that conditions in the TCC violated his Eighth Amendment rights by amounting to cruel and unusual punishment. He further claims his due process rights were violated by being placed in TCC without a hearing. He asks for monetary and other relief.

## DISCUSSION

**A.    Standard of Review**

A district court must review a complaint in a civil action in which a prisoner is proceeding <u>in forma pauperis</u> or seeks

redress against a governmental employee or entity.  The Court is required to identify cognizable claims and sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, as plaintiff is a prisoner and proceeding as an indigent.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), has refined the standard for summary dismissal of a complaint.  The issue there was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions as to his treatment during detention, which, if true, violated his

6

constitutional rights.  See id.  The Court examined Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief".  Citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-50 (citations omitted).  The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court

7

>should assume their veracity and then determine whether they plausible give rise to an entitlement to relief.

Id. at 1950.

To prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible. This allows a court to draw the reasonable inference that a defendant is liable for the misconduct alleged. See id. at 1948. Iqbal emphasizes that a plaintiff must demonstrate that the allegations of the complaint are plausible. See id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

Iqbal provides the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[1] that applied to federal complaints before Twombly. Fowler, 578 F.3d at 210. Now, after Iqbal, a district court must conduct the two-part analysis set forth in Iqbal:

>First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S. Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the

---

[1] In Conley, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

8

>plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S. Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-11.

But the sufficiency of the pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007).

**B.  Section 1983 Actions**

To establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct (1) was committed by a person acting under color of state law and (2) deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.  Plaintiff's Claim Regarding Religious Practice**

Plaintiff's claims regarding his religious practice, the serving of Halal meals, and use of prayer oils must proceed at this stage. In Williams v. Morton, 343 F.3d 212 (3d Cir. 2003), the plaintiffs were Muslim inmates who alleged that the defendant prison officials violated federal and state constitutional rights by providing the plaintiffs with vegetarian meals rather than

9

meals with Halal meat. The Court of Appeals agreed with the District Court that the decision of the Department of Corrections to provide vegetarian meals to religious Muslim inmates (rather than Halal meals with meat) was rationally related to the legitimate penological interests in simplified food service, security, and staying within the prison's budget. The Court of Appeals noted that the Free Exercise aspect of the plaintiffs' claim was assessed in light of the fact that Muslim inmates were provided with the opportunity to pray daily, attend special weekly services, and observe religious holidays. Turning to the equal protection aspect, the Court of Appeals concluded that the plaintiffs failed in their claim because there was no evidence that the Kosher meals provided to Jewish inmates contained meat. Williams, 343 F.3d at 219.

Here, as with the plaintiffs in Williams, Plaintiff does not assert that he is denied the opportunity to pray daily, attend special weekly services, and observe religious holidays. However, Plaintiff asserts that Jewish inmates are provided with Kosher meals or meats. (Am. Compl., ¶¶ 4, 25.) Plaintiff also claims that he is denied vegetarian meals, as the meals considered vegetarian contain meat. (Am. Compl., ¶ 24.) Thus, Plaintiff's claim appears to be distinguishable from Williams, and defendants will be ordered to answer.

It also appears that defendants must respond to Plaintiff's claims concerning prayer oils. Plaintiff claims that possession

of prayer oils is not permitted.  Defendants must respond to these claims.  See Turner v. Safley, 482 U.S. 78, 89-91 (1987); see also Vasquez v. Brown, 2008 WL 4792684, at *9-*10 (D.N.J. Oct. 30, 2008) (no constitutional Turner violation where possession of prayer oils permitted, but that delivery of prayer oils must be to commissary instead of directly to prisoner).

**D.   Plaintiff's Claim Regarding Job Placement**

Liberally construing the amended complaint, Plaintiff alleges that he was reassigned to a lower paying, less desirable job.  But an inmate has no property or liberty interest protected by the Constitution in obtaining employment.  See James v. Quinlan, 866 F.2d 627, 629-30 (3d Cir. 1989); Johnson v. Fauver, 559 F.Supp. 1287, 1290 (D.N.J. 1983).  Any property or liberty interest must be created by statutes or regulations.  See Hewitt v. Helms, 459 U.S. 460, 472 (1983).  While New Jersey law states that "inmates of all correctional . . . institutions . . . shall be employed," this language does not create a liberty or property interest in employment for inmates.  See N.J.S.A. § 30:4-92; Little v. Terhune, 200 F.Supp.2d 445, 450 & n.4 (D.N.J. 2002) (stating that New Jersey may have granted prisoners access to educational and work programs, but does not necessarily grant inmates liberty or property interest therein); Johnson, 559 F.Supp. at 1290-91 (statutory scheme does not create liberty or property interest in right to work, despite statutory language that all inmates shall

11

be employed); Rowe v. Fauver, 533 F.Supp. 1239 (D.N.J. 1982) (despite statutory language, "corrections officials have considerable discretion in providing or not providing work opportunities even where the health, strength and mental capacity of inmate are not involved, and thus inmate did not possess a state-created 'liberty' interest in prison employment").

Therefore, because Plaintiff had no liberty interest or constitutional right to employment, Plaintiff has not alleged facts indicating a constitutional violation. Thus, all claims relating to his employment will be dismissed for failure to state a claim upon which relief may be granted.

**E.   Plaintiff's TCC Claims**

Plaintiff claims that the conditions of the TCC violated his right to be free of cruel and unusual punishment, as he was not permitted to possess his personal items, and contracted a rash from being in the same clothes. Plaintiff was in TCC for nine days, from August 19, 2008 until August 28, 2008. He did not receive his property until September 4, 2008. (Am. Compl., ¶¶ 16, 18-20.) Plaintiff also alleges that his due process rights were violated by his placement in TCC.

Regarding Plaintiff's placement in TCC, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause

12

does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  Hewitt v. Helms, 459 U.S. 460, 468 (1983); see Sandin v. Conner, 515 U.S. 472, 484 (1995) (protected liberty interest is "generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life").  Having a security classification is not outside what a prisoner "may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law."  Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (citations omitted); see Montanye v. Haymes, 427 U.S. 236, 242 (1976) ("As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (prison officials have discretion over prisoner classifications and prisoners have no legitimate due process concerns in them).

    The Third Circuit Court of Appeals has held that an inmate's transfer to and confinement in administrative custody without a hearing prior to the transfer did not deprive him of a liberty interest, "and that he was not entitled to procedural due process protection."  Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997).

To invoke procedural due process protections, an inmate must show "that the prison's actions limited a protected liberty interest, and that procedures involved fell short of constitutional requirements."  Shoates v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). "Normally, transfer from one level of custody in a prison to another does not impinge a constitutionally protected interest." Bowen v. Ryan, 2006 WL 3437287, at *4 (M.D. Pa. Nov. 29, 2006) (citing Meachum v. Fano, 427 U.S. 215, 224 (1976) and Hewitt v. Helms, 459 U.S. 460, 468 (1983)).  But when an inmate demonstrates "atypical and significant hardship," notice of the charges against the inmate, and an opportunity to present his views to the official charged with deciding to transfer him to administrative custody, is required.  See Shoates, 213 F.3d at 145.

Furthermore, the Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  See Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  The Eighth Amendment proscription against cruel and unusual punishments is violated by the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993).  The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Id. at 31.

14

To state a claim under the Eighth Amendment, an inmate must allege both an objective and a subjective component. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' ... are sufficiently grave to form the basis of an Eighth Amendment violation." Helling, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346). This component requires that the deprivation sustained by a prisoner be sufficiently serious, for only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). The subjective component requires that the state actor have acted with "deliberate indifference," a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer v. Brennan, 511 U.S. 825, 835 (1994); Wilson, 501 U.S. at 303.

A plaintiff may satisfy the objective component by showing the conditions alleged, either alone or in combination, deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. See Rhodes, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). However, while the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." Rhodes, 452 U.S. at 349. To

15

the extent that certain conditions are only "restrictive" or "harsh," they are merely part of the penalty that criminal offenders pay for their offenses.  See id.  at 347.

An inmate may fulfill the subjective element by demonstrating that prison officials knew of such substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F.Supp. 193, 198 (D.N.J. 1997).

Plaintiff here has not alleged facts indicating that there was a substantial risk of harm to his health or safety.  He was in TCC for nine days, which is not a significant amount of time.  Further, he has not alleged facts indicating that he was deprived of food, clothing, or shelter; although he was not permitted a change of clothing.  While the conditions described by Plaintiff may not be considered "ideal," he has not alleged facts showing that the conditions were serious, or posed him serious harm.  Therefore, Plaintiff's claims concerning his TCC placement will be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**F.   Retaliation Claims**

Plaintiff alleges that he was placed in TCC and given a less desirable job assignment in retaliation for seeking remedies against prison officers.  He alleges that defendant Mee told him

16

that he would "return the favor" after telling Plaintiff that he was becoming "a pain" in exhausting his administrative remedies. (Am. Compl., ¶ 13.)

To state a claim for retaliation, Plaintiff must show that: "(i) he engaged in constitutionally protected conduct; (ii) an adverse action was taken by prison officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;' and (iii) there was a causal relationship between the two." See Adegbuji v. Green, 280 Fed.Appx. 144, 148 (3d Cir. 2008) (quoting and citing Rauser v. Horn , 241 F.3d 330, 333 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 148.

The retaliation claim here must proceed past sua sponte screening, and defendants will be required to answer.

**G.  Plaintiff's Motion for Restraining Order**

Plaintiff moved for a restraining order and an injunction seeking the return of his musical and electronic equipment, stating that defendants are intimidating and harassing him. (Docket entry 6.)  To secure the extraordinary relief of a

17

preliminary injunction, Plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendant[s]; and (4) granting the injunction is in the public interest." Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir. 1998). A plaintiff must show that all four factors favor preliminary relief. See Opticians Ass'n of Am. v. Independent Opticians of Am., 920 F.2d 187 (3d Cir. 1990).

Plaintiff's request for preliminary injunctive relief will be denied. Plaintiff has not shown how the denial of his request to return his musical equipment will result in irreparable harm, or that it is in the public interest. Defendants will be ordered to address Plaintiff's claims in the answer to the complaint.

## CONCLUSION

Plaintiff's religion and retaliation claims will proceed. The claims concerning his TCC and job placement will be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Plaintiff's motion for an injunction will be denied. The Court will issue an appropriate order.

                                                s/Mary L. Cooper
                                                **MARY L. COOPER**
                                                United States District Judge

Dated: February 19, 2010