**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|                           |   |                                  |
|---------------------------|---|----------------------------------|
| SHAROB ABDUL-AZIZ,        | : | CIVIL ACTION NO. 08-5764 (MLC)   |
|                           | : |                                  |
|   Plaintiff,    | : | **MEMORANDUM OPINION**           |
|                           | : |                                  |
|   v.            | : |                                  |
|                           | : |                                  |
| MICHELLE RICCI, et al.,   | : |                                  |
|                           | : |                                  |
|   Defendants.   | : |                                  |

**COOPER, District Judge**

Plaintiff, Sharob Abdul-Aziz, brought this action pursuant
to 42 U.S.C. § 1983 ("Section 1983") against defendants,
Michelle Ricci ("Ricci"), former Administrator of New Jersey
State Prison ("NJSP"); Donald Mee ("Mee"), Assistant
Administrator of NJSP; William Moleins ("Moleins"), former
corrections captain at NJSP; and Clay McClain ("McClain"), a
Sergeant at NJSP (collectively the "defendants"), claiming that
his job was reassigned in retaliation for exercising his First
Amendment right to file grievance reports against NJSP
administrators and officers.  (See dkt. entry no. 5, Am. Compl.)[1]

---

[1] The defendants earlier moved for summary judgment in their
favor and against the plaintiff on the claims raised against
them in the Amended Complaint.  (See dkt. entry no. 43, 6-20-11
Notice of Defs.' Mot.)  The Court (1) granted that motion to the
extent that it sought judgment on claims concerning religion,
claims for injunctive relief, and retaliation claims concerning
the plaintiff's time spent in Temporary Closed Custody, and (2)

The defendants now move for summary judgment in their favor and against the plaintiff, pursuant to Federal Rule of Civil Procedure ("Rule") 56 as to the sole remaining claim of retaliation concerning the plaintiff's job reassignment. (See dkt. entry no. 82, Notice of Defs.' Mot.; dkt. entry no. 82-2, Defs.' Br.) The plaintiff opposes the Motion. (See dkt. entry no. 84, Opp'n Br.)

The Court will resolve the Motion on the papers and without oral argument pursuant to Local Civil Rule 78.1(b). The Court, for the reasons stated herein, will grant the Motion.

## I.    SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56, which provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to

denied it to the extent that it sought judgment on the retaliation claim concerning the plaintiff's job reassignment and claim for punitive damages related thereto. (See dkt. entry no. 54, 12-28-11 Order & J.)

permit a reasonable jury to return a verdict for the non-moving party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The burden on the movant may be discharged by pointing out to the district court that there is an absence of evidence supporting the nonmovant's case.  See Celotex, 477 U.S. at 323.

If the movant demonstrates an absence of genuinely disputed material facts, then the burden shifts to the nonmovant to demonstrate the existence of at least one genuine issue for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Williams v. Bor. of W. Chester, Pa., 891 F.2d 458, 460-61 (3d Cir. 1989).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks omitted).  The nonmovant cannot, when demonstrating the existence of issues for trial, rest upon argument; the nonmovant must show that such issues exist by referring to the record.  See Fed.R.Civ.P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor.  Scott v. Harris, 550 U.S. 372, 380 (2007); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).  If the

nonmovant fails to demonstrate that at least one genuine issue exists for trial, then the Court must determine whether the movant is entitled to judgment as a matter of law.  See McCann v. Unum Provident, 921 F.Supp.2d 353, 357 (D.N.J. 2013).  "A movant is entitled to judgment as a matter of law if, at trial, no reasonable jury could find for the non-moving party."  Id.

## II.  APPLICATION OF LOCAL CIVIL RULE 56.1

Local Civil Rule 56.1(a), a companion to Rule 56, (1) requires parties to present argument by reference to the materials in the record, and (2) allows the Court to deem the movant's factual assertions undisputed, where a nonmovant fails to present an argument by reference to the record.  See Fed.R.Civ.P. 56(c), (e)(2); Carita v. Mon Cheri Bridals, LLC, No. 10–2517, 2012 WL 3638697, at *1–2 (D.N.J. Aug. 22, 2012).  In pertinent part, it provides that:

> On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue . . . . The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.

L.Civ.R. 56.1(a) (emphasis added).

A movant's statement of facts and a nonmovant's related response serve a vital purpose, in that they assist the Court in identifying whether material facts are truly in dispute. See Am. Plaza, LLC v. Marbo Cross Shop, LLC, No. 08-5963, 2010 WL 455349, at *2 (D.N.J. Feb. 3, 2010). Local Civil Rule 56.1(a) thus puts the onus on the parties, rather than the Court, to find evidence of record supporting their respective arguments. See Baker v. Hartford Life Ins. Co., No. 08-6382, 2010 WL 2179150, at *2 n.1 (D.N.J. May 28, 2010) ("It is not the Court's responsibility to comb the record on behalf of Plaintiff's counsel."), aff'd, 440 Fed.Appx. 66 (3d Cir. 2011); N.J. Auto. Ins. Plan v. Sciarra, 103 F.Supp.2d 388, 408 (D.N.J. 1998) ("[I]t is the responsibility of each party to support its own contentions with a proper basis in the record of the case."). "Given the vital purpose that such rules serve, litigants ignore them at their peril." McCann, 921 F.Supp.2d at 358 (quoting Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007)).

The defendants, pursuant to Local Civil Rule 56.1(a), filed a statement of facts in support of the Motion. (See dkt. entry no. 82-1, Defs.' Statement of Material Facts ("Defs.' SOF").) The plaintiff filed a response to the defendants' SOF. (See dkt. entry no. 86, Pl.'s Am. Resp. to Defs.' SOF.) The plaintiff also filed a Supplemental Statement of Material Facts.

(See dkt. entry no. 84-3, Pl.'s Counter Statement of Material
Facts ("Pl.'s Counter SOF").)  The Court will consider the facts
recited by the parties, and any material fact not disputed will
be deemed undisputed for purposes of the Motion.  The Court will
incorporate the undisputed facts into the following findings of
fact.

**III. FINDINGS OF FACT**

The plaintiff is currently incarcerated at NJSP and is
serving a life sentence.  (See Defs.' SOF at ¶¶ 1, 3; Pl.'s Am.
Resp. to Defs.' SOF at ¶¶ 1, 3.)  The plaintiff filed grievance
reports alleging misconduct by NJSP administrators and officers
on March 23, 2008, March 30, 2008, June 29, 2008, and August 23,
2008.  (See Opp'n Br. at 7.)  The plaintiff filed the initial
Complaint on November 24, 2008.  (See dkt. entry no. 1, Compl.)

The plaintiff began working as a forms room clerk in the
North Compound vocational area of NJSP in 2007.  (See Pl.'s
Counter SOF at ¶ 1.)  A limited number of inmates, including the
plaintiff, have access to computers to aid in the performance of
their work functions.  (See Defs.' SOF at ¶ 29; Pl.'s Am. Resp.
to Defs.' SOF at ¶ 29.)  Inmates are not permitted to use their
workstation computers for personal reasons and are not permitted
to download and store personal music files or games on the
computers.  (See Defs.' SOF at ¶¶ 28-29; Pl.'s Am. Resp. to
Defs.' SOF at ¶¶ 28-29.)  The plaintiff was the only person who

6

used his workstation computer.  (See Defs.' SOF at ¶ 30; Pl.'s
Am. Resp. to Defs.' SOF at ¶ 30.)  The plaintiff knew music
files were stored on his workstation computer and listened to
the music that was stored on his computer on at least one
occasion.  (See Defs.' SOF at ¶¶ 32-33; Pl.'s Am. Resp. to
Defs.' SOF at ¶¶ 32-33.)

On January 29, 2009, during a tour of the North Compound
vocational area, Moleins observed speakers connected to the
plaintiff's workstation computer and discovered music files
stored on the computer.  (See Defs.' SOF at ¶ 4; Pl.'s Am. Resp.
to Defs.' SOF at ¶ 4.)  Ricci was also present for this tour.
(See dkt. entry no. 82-4, Decl. of Erin M. Greene, Ex. E, Ricci
Dep. 37:4-10, May 20, 2013.)  On February 2, 2009, the plaintiff
received a disciplinary infraction for prohibited act *.009,
which refers to "the misuse, possession, distribution, sale, or
intent to distribute or sell, an electronic communication
device, equipment or peripheral that is capable of transmitting,
receiving, or storing data and/or electronically transmitting a
message, image or data that is not authorized for use or
retention."  (See Defs.' SOF at ¶ 5; Pl.'s Am. Resp. to Defs.'
SOF at ¶ 5.)  The charge was filed by Lieutenant Alaimo at the
direction of Moleins.  (See Defs.' SOF at ¶ 6; Pl.'s Am. Resp.
to Defs.' SOF at ¶ 6; Decl. of Erin M. Greene, Ex. I, Abdul-Aziz
Dep. 85:6-8, May 22, 2013.)

That same day, the plaintiff was laid-in from his work assignment as a forms room clerk because of the disciplinary infraction.  (See Defs.' SOF at ¶ 7; Pl.'s Am. Resp. to Defs.' SOF at ¶ 7.)  The plaintiff's disciplinary charge was dismissed because the plaintiff was not served with the charge within the forty-eight hour time limit provided by Title 10A of the New Jersey Administrative Code.  (See Defs.' SOF at ¶ 50; Pl.'s Am. Resp. to Defs.' SOF at ¶ 50.)  As such, the plaintiff was found not guilty of the *.009 charge.  (See Defs.' SOF at ¶ 10; Pl.'s Am. Resp. to Defs.' SOF at ¶ 10.)

Inmate Baker also received a disciplinary infraction for prohibited act *.009 as a result of the search.  (See Pl.'s Counter SOF at ¶ 12.)  Like the plaintiff, Inmate Baker was laid-in from his work assignment and subsequently found not guilty of the disciplinary infraction because the charge was not brought timely.  (See id. at ¶¶ 13-14.)

In order to be seen by the Institutional Classification Committee ("ICC") for a job review, a meeting request must be made to the Classification Department.  (See Defs.' SOF at ¶ 55; Pl.'s Am. Resp. to Defs.' SOF at ¶ 55.)  When the Classification Department received the lay-in form signed by Lieutenant Alaimo, the Classification Department initiated a request for a job review meeting with the ICC.  (See Defs.' SOF at ¶ 54; Pl.'s Am. Resp. to Defs.' SOF at ¶ 54.)

On February 11, 2009, the plaintiff met with the ICC for a job assignment review.  (See Defs.' SOF at ¶ 11; Pl.'s Am. Resp. to Defs.' SOF at ¶ 11.)  The individuals on the ICC did not include the defendants, and none of the defendants were present at the ICC meeting on February 11, 2009.  (See Defs.' SOF at ¶¶ 12-16; Pl.'s Am. Resp. to Defs.' SOF at ¶¶ 12-16.)  In determining whether inmates should be reassigned to their previous job positions, the ICC may look at conduct underlying the disciplinary charges, regardless of the result of the disciplinary hearing.  (See Defs.' SOF at ¶ 41; Pl.'s Am. Resp. to Defs.' SOF at ¶ 41.)  The ICC has the discretion to reassign an inmate to a different job if it determines that the safety and security of the facility will be threatened by returning the inmate to the inmate's former work assignment.  (See Defs.' SOF at ¶ 43; Pl.'s Am. Resp. to Defs.' SOF at ¶ 43.)  The ICC decided to reassign the plaintiff's job from forms room clerk to cell sanitation.  (See Defs.' SOF at ¶ 19; Pl.'s Am. Resp. to Defs.' SOF at ¶ 19.)

## IV.  ANALYSIS

The defendants argue that they are entitled to summary judgment "in regard to the Plaintiff's sole remaining claim for retaliation because [the plaintiff] failed to produce evidence to support his allegations that the filing of grievances and/or complaints was a substantial motivating factor in the . . .

decision to reassign his job." (Defs.' Br. at 1.) In particular, the defendants stress that the plaintiff has "offered no evidence to support the conclusion that [the defendants] interfered with the ICC's independent decision making process which ultimately resulted in the ICC's decision to reassign his job and therefore, they are entitled to judgment as a matter of law." (Defs.' Reply Br. at 5.)

The plaintiff counters that "(1) Defendants influenced the [ICC's] decision to reassign him from forms room clerk to cell sanitation and (2) Plaintiff did not misuse his work computer as he did not put music files on the computer and his supervisors instructed him that he could keep the music files on his computer." (Opp'n Br. at 1.)

The First Amendment to the United States Constitution protects an individual's right "to petition the Government for redress of grievances." See U.S. Const. amend. I. "Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under [S]ection 1983." White v. Napoleon, 897 F.2d 103, 112-13 (3d Cir. 1990). A prisoner litigating a retaliation claim therefore need not prove that he had an independent liberty interest in the privilege that he was denied. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

To establish a prima facie case of retaliation a plaintiff must prove that: (1) the plaintiff was engaged in a constitutionally protected activity; (2) the plaintiff suffered an adverse action at the hands of prison officials sufficient to deter a person of ordinary firmness from exercising constitutional rights; and (3) the protected activity was a substantial or motivating factor in the prison officials' decision to take adverse action against the plaintiff.  See id. "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  See id. at 334.

The Court previously determined that the plaintiff was engaged in a constitutionally protected activity by filing grievances against the defendants.  (See dkt. entry no. 53, 12-28-11 Op. at 14 ("Plaintiff filed a grievance against Defendants, which is constitutionally-protected conduct.").) See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (stating that filing of prison grievances constitutes protected conduct failing within ambit of First Amendment).  The defendants have not challenged this conclusion.  (See generally Defs.' Br. at 9-10.)

The plaintiff must next present evidence that he was subject to adverse action at the hands of prison officials. The plaintiff argues that the "reassignment of Plaintiff from a forms room clerk to cell sanitation is an adverse action." (See Opp'n Br. at 5.) The plaintiff maintains that the reassignment was an adverse action sufficient to deter a person of ordinary firmness from exercising constitutional rights because "[w]hen Plaintiff was reassigned, he went from a pay rate of $3.70 to a pay rate of $1.40." (See id.) As the defendants do not dispute this evidence, the plaintiff has presented sufficient evidence of adversity to survive summary judgment up to this stage in the analysis.[2]

As these two threshold criteria are met, there remains the question of whether the plaintiff's protected activity was a substantial or motivating factor in the prison officials' decision to take adverse action against him. The Court agrees

_____

[2] Although the defendants do not dispute that the job reassignment was an adverse action, the defendants insist that the plaintiff was not subjected to any adverse action by the defendants. (See dkt. entry no. 85, Defs.' Reply Br. at 2.) The defendants argue that "the record is devoid or evidence that Plaintiff has been subjected to any adverse action by the State Defendants in regard to his job, as the decision to reassign Plaintiff's job was made independently by [the ICC], which did not include any of the parties to this litigation." (See id.) The Court considers this argument in its analysis of whether the protected activity was a substantial or motivating factor in the prison officials' decision to take adverse action against the plaintiff.

with the defendants that the plaintiff has failed to produce
evidence to support his allegations that the filing of
grievances and this lawsuit were substantial or motivating
factors in the prison officials' decision to reassign the
plaintiff's job.

The plaintiff's arguments to the contrary misrepresent the
record. The plaintiff argues that "[a]lthough none of the
Defendants were on the ICC panel that ordered Plaintiff's
reassignment, Plaintiff has good reason to believe that
Defendants Ricci and Moleins influenced the ICC decision because
Lieutenant Alaimo, Defendants' fellow officer, told Plaintiff
that Defendants Ricci and Moleins forced ICC to reassign
Plaintiff." (Opp'n Br. at 5-6.) In support of this position,
the plaintiff cites to his deposition testimony.[3] The plaintiff,
however, mischaracterizes the record, as the plaintiff's
testimony is devoid of any evidence signifying the defendants'
involvement in the decision to reassign the plaintiff. In
reality, the plaintiff's testimony regarding conversations with

_____

[3] As noted by the defendants, the plaintiff, in his opposition
papers, cites to the incorrect portion of his deposition
transcript when attempting to support his position that the
defendants influenced the ICC panel. The plaintiff cites to
pages 23 through 24 of his deposition, which do not lend support
to his argument. The Court has, however, reviewed the
plaintiff's deposition in its entirety, and will consider all
portions of the deposition that may lend support to the
plaintiff's argument.

Lieutenant Alaimo was limited to assertions that Lieutenant Alaimo told him that Moleins instructed him to issue the disciplinary charge. (See Abdul-Aziz Dep. 98:13-99:9.) Specifically, the plaintiff testified:

> **Q.** And when you spoke to Lieutenant Alaimo, after the disciplinary report was written, what reason did he give you for why a disciplinary charge was written?
>
> **A.** He told me that Moleins wanted him to write the charge. He was very specific about that.
>
> **Q.** Did he say that there was any specific reason that they were writing a charge against you?
>
> **A.** No.
>
> **Q.** Did he explain anything about the use of the computer as a reason for why they were writing the charge?
>
> **A.** Oh, he says that that's what the charge was.
>
> **Q.** What's what the charge was?
>
> **A.** Having the speakers on the computers he says. But he told me, he said they even want me to write you a charge for that but don't worry, don't worry about the charge. It's gonna get thrown out. It's past the time, he says, but they insisted and Moleins is insisting that I write the charge, he says, so I got to write it.

(Id.)

This testimony provides no evidence that "Ricci and Moleins forced ICC to reassign Plaintiff," as the plaintiff implies in his opposition papers. The testimony, rather, only indicates

14

that Moleins ordered Lieutenant Alaimo to issue the disciplinary charge.

The plaintiff also testified that he believed the request for his job reassignment came from Administration – specifically Ricci and Moleins – as the "PCC form" proved that his job reassignment was requested by the Administration. (See id. at 99:14-24; 102:10-22.)[4] Specifically, the plaintiff testified:

**Q.** And you mentioned earlier that there was a request by the administration for your reassignment?

**A.** Yes.

**Q.** How do you know that the request was made by the administration?

**A.** I have the PCC form right here where it says – do you want to mark it?

**Q.** The thing you're looking at, we should have it marked.

(Exhibit Abdul-Aziz 8 was received and marked for identification.)

. . . .

**Q.** Okay. And is it your position from this document, it looks as though your reassignment was requested by administration?

**A.** Yes, solely.

**Q.** And what does that mean to you?

_____

[4] For a further explanation of the PCC form, see infra note 5.

**A.** Again, it plays in there with everything everybody was saying, that this came from administration.

**Q.** What is administration?

**A.** Well, it came from Ricci or Moleins.

**Q.** What makes you believe that it came from Ricci or Moleins?

**A.** Because they the administration.

(Id.)

This testimony provides no evidence that the defendants were involved in the decision to reassign the plaintiff's job. Although the plaintiff testified that he believed the PCC form showed that his job reassignment was requested "solely" by the Administration, the Court agrees with the defendants that the correct interpretation of the PCC form is that it "reflects the request for the meeting before the ICC for a job assignment review, not a specific request for a job reassignment." (See Defs.' Reply Br. at 9.)

The plaintiff's confusion results from his fundamental misunderstanding of the New Jersey Department of Corrections centralized electronic system, the PCC form, and the circumstances under which an inmate is referred to the ICC for a job review. When an inmate is laid-in, the inmate is referred to the ICC for a job review. (See Ricci Dep. 48:10-12; Defs.' SOF at ¶ 40 ("Following disposition of the disciplinary charges,

all inmates must go before the [ICC] for job assignment,

regardless of the outcome of the disciplinary proceedings.");

Pl.'s Am. Resp. to Defs.' SOF at ¶ 40.)  When the Classification

Department received the lay-in form signed by Lieutenant Alaimo,

the Classification Department, not Ricci or Moleins, initiated a

request for a job review meeting with the ICC.  (See Defs.' SOF

at ¶ 54; Pl.'s Am. Resp. to Defs.' SOF at ¶ 54; see also dkt.

entry no. 82-3, Decl. of Cassandra DeCristi at ¶¶ 5-6.)[5]  Even in

---

[5] Cassandra DeCristi, a Classification Officer Supervisor at
NJSP, explains the mechanics of the PCC form in her Declaration:

> 18.  The Record Request screen [of the PCC form]
> allows a Classification Officer to indicate the source
> of the job review request to meet with the [ICC].
>
> . . . .
>
> 20.  When an inmate needs to be seen by the [ICC] for
> a job review request and that request was not made by
> the inmate, the standard selection is "Admin".
>
> 21.  The request which prompted the [ICC] meeting for
> a job review for [the plaintiff] was initiated by the
> receipt of the Administrative lay-in form . . . .
>
> 22.  The [lay-in form] indicates that the Lay-in was
> initiated from assigned work/program Custody
> Supervisor, as this was the request for the [ICC]
> meeting and the request was not made by the inmate.
>
> 23.  Accordingly, the [screenshot of the PCC form]
> indicates the request for the [ICC] meeting was made
> by "Admin".

(See Decl. of Cassandra DeCristi at ¶¶ 18, 20-23 (citations
omitted).)

a situation where the disciplinary charge resulting in the lay-
in is dismissed and the inmate is found not guilty, the inmate
is still referred to the ICC.  (See Ricci Dep. at 48:13-25;
Defs.' SOF at ¶ 40; Pl.'s Am. Resp. to Defs.' SOF at ¶ 40.)  As
such, even if an inmate is found not guilty of a disciplinary
infraction, the ICC has the discretion to reassign an inmate to
a different job.  (See Ricci Dep. at 49:1-3; Defs.' SOF at ¶ 43;
Pl.'s Am. Resp. to Defs.' SOF at ¶ 43.)

     The Court agrees with the defendants that the "record is
simply devoid of evidence which reflects any personal
involvement by [the defendants] in the decision to modify
Plaintiff's job assignment."  (See Defs.' Reply Br. at 9.)  In
addition to the plaintiff's misrepresentation and
misunderstanding of the record regarding the request for the
meeting before the ICC, as described supra, there is ample
evidence that the defendants were not involved in the ICC's
decision.  The individuals on the ICC did not include the
defendants, and none of the defendants were present at the
February 11, 2009 ICC meeting.  (See Defs.' SOF at ¶¶ 12-16;
Pl.'s Am. Resp. to Defs.' SOF at ¶¶ 12-16.)  In regard to Mee
and McClain, the Amended Complaint is devoid of factual
allegations against them regarding the retaliation claim.  (See
Am. Compl.)  In regard to Ricci, the plaintiff conceded that
Ricci neither made any statement nor exhibited any specific

conduct that would support the plaintiff's belief that she was
retaliating against him for filing grievances and the lawsuit.
(See Abdul-Aziz Dep. 86:8-18.) Ricci also testified that she
did not have any personal involvement in the decision to
reassign the plaintiff. (See Ricci Dep. 63:19-23.) In regard
to Moleins, he not only testified that he was not involved in
the ICC's decision to reassign the plaintiff, but plaintiff
expressly agreed that Moleins was not involved in the decision-
making process to reassign his job. (See Decl. of Erin M.
Greene, Ex. G, Moleins Dep. 25:5-16, April 30, 2013; Defs.' SOF
at ¶ 18; Pl.'s Am. Resp. to Defs.' SOF at ¶ 18.) As there is no
evidence that the defendants were involved in the ICC's decision
to reassign the plaintiff's job, the plaintiff's claim cannot
survive summary judgment. See, e.g., Hill v. Blum, 916 F.Supp
470, 474 (E.D. Pa. 1996) ("[A] defendant cannot be liable under
§ 1983 unless there is some showing that he was either directly
involved in, or had knowledge of an acquiesced in, the alleged
violation.").[6]

---

[6] In Hill, the court reasoned:

> In the present case, the evidence shows that Mr. Hill
> was removed from his position in the kitchen after a
> support team hearing. Mr. Hill concedes that Officer
> Blum was not a member of the team and has otherwise
> failed to produce any evidence to demonstrate that
> Officer Blum decided to remove him from his
> position. Therefore, we are compelled to grant

The plaintiff lastly argues that the temporal proximity between his protected activity and his job reassignment, as well as the disparate treatment he received in comparison to Inmate Baker, suggest that the plaintiff's protected activities were a substantial motivating factor for the adverse action. (<u>See</u> Opp'n Br. at 6-8.) These arguments are unavailing.

The plaintiff has not provided evidence of a suggestive temporal proximity between the time he filed the grievances and lawsuit and the time his job was reassigned. An unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action may help establish a causal connection. <u>See Lauren W. ex rel. Jean W. v. DeFlaminis</u>, 480 F.3d 259, 267 (3d Cir. 2007). The plaintiff relies on a case that found a suggestive temporal proximity between a plaintiff's protected activity and the reassignment of his job two to three weeks later. (<u>See</u> Opp'n Br. at 7.) <u>See Kantamanto v. King</u>, 651 F.Supp.2d 313, 327 (E.D. Pa. 2009) (finding temporal proximity suggestive of retaliation where protected activity occurred in early April 2006 and termination occurred April 19, 2006). <u>But see Williams v. Phila. Hous. Auth. Police Dep't</u>, 380 F.3d 751,760 (3d Cir. 2004) (finding no temporal proximity unduly

---

Officer Blum's motion for summary judgment with respect to the retaliation claim.

<u>Id.</u>

suggestive of retaliation with two months between protected activity and termination); Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (finding three weeks between filing of complaint and termination did not present suggestive temporal proximity).

The plaintiff here filed his last grievance on August 23, 2008, and he filed his initial Complaint on November 24, 2008. (See Opp'n Br. at 7; Compl.) The search of the plaintiff's computer was not conducted until January 29, 2009, and his job was not reassigned until February 11, 2009. As the number of inmate grievances at NJSP can number up to 300-400 per month, and the fact that the search of the North Compound vocational area was triggered by a search in a different area of the facility that found unauthorized music files and games stored on several computers, there is nothing unduly suggestive about the plaintiff's job being reassigned nearly three months after he filed his lawsuit and nearly five months after he filed his last grievance. (See Ricci Dep. 62:5-11; Defs.' SOF at ¶ 26; Pl.'s Am. Resp. to Defs.' SOF at ¶ 26.) "The mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." Hunter v. Filip, 788 F.Supp.2d 336, 342 (D.N.J. 2011). In cases such as this one where the temporal proximity is not so close as to be unduly

suggestive, "timing plus other evidence may be an appropriate test." See Thomas, 351 F.3d at 114. As stated throughout, however, there is no "other evidence" probative of a nexus between the plaintiff's protected conduct and the decision to take adverse action.

The fact that the plaintiff's job was reassigned while Inmate Baker was reinstated to his former position was because Inmate Baker was not accused of storing unauthorized music files on his workstation computer. (See Decl. of Erin M. Greene, Ex. F, Ahrens Dep. 24:3-25:5, April 26, 2013.) While the plaintiff was laid-in because he had external speakers and unauthorized music stored on his computer, Inmate Baker was laid-in only because he had external speakers on his computer. (See id.) Because the facts underlying the disciplinary infractions received by each the plaintiff and Inmate Baker differ, the Court finds that it was reasonable for the ICC to reach different results regarding their job assignments.[7] Accordingly, the plaintiff has not demonstrated that his protected conduct was a substantial or motivating factor in the decision to take adverse action.

_____

[7] The ICC has the discretion to reassign an inmate to a different job. (See Defs.' SOF at ¶ 43; Pl.'s Am. Resp. to Defs.' SOF at ¶ 43.) The Court recognizes that "the task of prison administration is difficult, and that courts should afford deference to decisions made by prisons officials, who possess the necessary expertise." See Rauser, 241 F.3d at 334.

As the plaintiff has failed to demonstrate that his exercise of a constitutional right was a substantial or motivating factor in the decision to reassign his job, the Court need not consider whether the same decision would have been made regarding the plaintiff's job absent the protected conduct for reasons reasonably related to a legitimate penological interest.

**V.     CONCLUSION**

For the reasons stated, and for good cause showing, the Court will grant the motion for summary judgment.  The Court will issue an appropriate order and judgment.


                                            ___s/ Mary L. Cooper_____
                                            **MARY L. COOPER**
                                            United States District Judge


Dated: January 10, 2014